### Edwin Beggs, Appellee, v. Postal Telegraph-Cable Company, Appellant.

1. TELEGRAPHS AND TELEPHONES—*delayed message.* The fact that certain wires of a telegraph company went "dead" will not avoid liability for damages for delay in dispatching a message if there was time enough before to have sent it or other means of transmission were available.

2. APPEALS AND ERRORS—*harmless error.* Where the court improperly sustains an objection to a question of defendant and a verdict is rendered against defendant, it is not reversible error if the verdict is supported by the evidence notwithstanding the particular matter covered by the question.

3. EVIDENCE—*leading questions.* A question is leading which puts into the mouth of the witness the words to be echoed back or plainly suggests the answer desired.

4. APPEALS AND ERRORS—*appellate court bound by its own decisions.* The decisions and announced propositions of law of the appellate court are binding on that court and will not be departed from in a subsequent appeal of the same case, nor will it review its former opinions.

Appeal from the Circuit Court of Macon county; the HON. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

HUGH CREA and HUGH W. HOUSUM, for appellant.

CHESTER ALLAN SMITH and BUCKINGHAM & GRAY, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Plaintiff brought suit in trespass on the case against the defendant to recover damages for alleged delay in the transmission of a cypher telegram sent by H. I. Baldwin & Co., agent of plaintiff, from Decatur, to the Nye & Jenks Grain Co. at Chicago. The case has been tried twice in the circuit court. On the first trial the plaintiff recovered a verdict for $1,125 upon which the court rendered judgment. Upon appeal to this court that judgment was reversed and the cause remanded. Beggs v. Postal Telegraph-Cable Co., 159 Ill. App. 247. A statement of the case, pleadings, facts and legal questions involved in that appeal will be found in our former opinion and need not be repeated here. After the case was remanded the second and fourth counts of the declaration were amended by making the averment that it was the duty of the defendant to deliver messages within a reasonable time, and that 9:30 A. M. was a reasonable time within which the message should have been delivered. On the second trial the plaintiff recovered a verdict for $750 upon which judgment was rendered and the defendant again appeals.

In the former opinion of this court the case was reversed for the reasons (1) that the court had sustained objections to evidence offered by defendant to prove the condition of its service, and the means it had to transmit the message, and (2) because the evidence did not show that if the telegram had been received in Chicago at 9:30, the receiver of the telegram would

have been able to find a purchaser on the board of trade for the grain offered for sale, or could have consummated a contract of sale such as plaintiff authorized by the telegram.

The evidence in the case now shows that when the market opened on the board of trade at 9:30 wheat was at ninety-seven cents and if the telegram had been delivered by that time the wheat, directed by the telegram to be sold, would have been disposed of at ninety-five and ninety-five and one-half cents, the prices fixed in the dispatch. One of the firm of the Nye & Jenks Grain Co., testified that the firm would have taken the wheat as offered by the telegram when the market opened at 9:30, but when the telegram was delivered at 9:45 the price had declined so that sales could not be made at the prices named. The agents of plaintiff were notified at 10:40 that the telegram had been delayed and that at 10:35 the price had fallen to ninety-four and a half cents, so that the proof now is that there was a loss because of the failure to deliver the telegram.

It is urged by appellant that it was not guilty of any negligence and that the court erred in refusing to give a peremptory instruction to find in its favor. The telegram was delivered by Baldwin & Co., to a messenger of the defendant in Decatur at 9:05 A. M. It was received at the defendant's Decatur office at 9:10, but was not forwarded until 9:37 and was delivered in Chicago at 9:40. The evidence snows that the defendant has three wires connecting its Decatur and Chicago offices with three operators in Decatur; that at 9:15 two of the wires went dead or became open, so that messages could not be transmitted to Chicago over them, and remained dead or open between ten and fifteen minutes; before 9:15 grain messages to Chicago go to the Chicago general office, but after 9:15 they go direct to an office in the board of trade. The message in question could have been transmitted in a minute and a half over any of these wires. J. J. Fierek,

the manager of the defendant's Decatur office, testified that they had instructions not to use one of these wires, described as the third, in the forenoon when what is called the multiplex system is being used, without getting permission from Chicago and that would take ten or fifteen minutes, but there is no proof that the multiplex system was being used that forenoon. He also testified that five other grain messages were transmitted from Decatur over the wire after the one alleged to have been delayed was received, before it was sent, and that he does not know whether they were transmitted in the order they were received or not, or whether the delayed telegram was in the office in advance of the five messages sent before it; that he supposed the delayed message was a grain message and he knew that such messages are important and should be delivered as quickly as possible, and that he sent two or three telegrams to Chicago by way of St. Louis to the wire chief asking him to locate the difficulty with the wires. H. I. Baldwin, one of the firm who sent the telegram, testified that the manager of the defendant solicited their business and that he told the manager that their messages were for the sale or purchase of grain and were important, and that it was necessary that their telegrams should be on the board of trade before 9:30 A. M. The defendant from the statement of its manager at Decatur could get dispatches to Chicago by way of St. Louis while two of the direct wires were open and it might have sent the delayed dispatch the same way, or it might have sent it over the Western Union Telegraph line or have got permission to use the third wire. There is evidence of negligence upon which the verdict can be sustained and there was no error in refusing the peremptory instruction.

Defendant contends that the court erred in refusing to admit evidence offered by it. Defendant's manager at Decatur, after testifying that the defendant's wires between Decatur and Chicago went through

Bloomington, Clinton, Peoria, Streator and other cit-
ies, was asked: ''A telegram on July 8, 1907, being
sent from your office to Chicago would have to pass
through these various offices you have named?'' An
objection to this question, that it was leading, was sus-
tained. The question was leading as it puts into the
witness's mouth the words to be echoed back, or
plainly suggests the answer which defendant desired.
4 Ency. of Ev. 654. It was also a repetition of an
answer just made by the witness. The next question
was: ''Would the fact of there being these offices you
have referred to on the line between Decatur and Chi-
cago have any tendency to delay the transmission of
a message from Decatur to Chicago?'' It was an-
swered: ''Well, the mere fact we are running through
them would not necessarily unless they were using the
wires.'' This was followed by a question and answer
showing that if the intermediate offices were using the
wires, the Decatur office would have to wait until they
got through with them. If the ruling had not been
proper, still the defendant was not harmed thereby
for the reason the answer desired was obtained from
the witness both before and after the ruling com-
plained of was made. It is also contended that there
was error in sustaining an objection to a question put
to Fierek, ''if there was anything you could have done
after the line came open that you did not do in order to
get that telegram through; what could you have
done?'' This was objected to with the statement that
he might tell what he did. We see no legal reason for
sustaining the objection unless it be that his answer
might have been merely a conclusion. The evidence
shows that there were several things that might have
been done, while the two wires were open, that he did
not do. There was time enough after the telegram
was received before the wires went dead to have sent
it, and if the lines were dead fifteen minutes, then on
the witness' statement the message was not sent for

seven minutes after they were closed. The ruling was not reversible error.

Several contentions are presented and argued at considerable length, but the same arguments were urged and the same authorities cited on the former appeal and those contentions were passed upon in our former opinion. The decision of an appellate court and the propositions of law announced in reversing a case are binding on that court and will not be departed from on a subsequent appeal in the same case. *In re* Maher's Estate, 204 Ill. 25; Griesbach v. People, 226 Ill. 65; Mariner v. Ingraham, 230 Ill. 130; Landt v. McCullough, 130 Ill. App. 515.

We have no right or desire to review our former opinion. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*